IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHEN DIVISION

| | |
|---|---|
| **BETH SCOTT (F.K.A. HAMILTON),**<br><br>**Plaintiff,**<br><br>v.<br><br>**OGDEN WEBER TECHNICAL COLLEGE,**<br><br>**Defendant.** | **REPORT AND RECOMMENDATION**<br><br>**Case No. 1:16-cv-00048-JNP-DBP**<br><br>**District Judge Jill N. Parrish**<br><br>**Magistrate Judge Dustin B. Pead** |

## INTRODUCTION

This case is currently before Magistrate Judge Dustin Pead pursuant to a 28 U.S.C. §636(b)(1)(B) referral from District Court Judge Jill Parrish.[1]  Beth Scott ("Plaintiff") brings this action against Ogden Weber Technical College ("Defendant" or "College"), alleging claims of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964.[2]

Presently before the court is Defendant's *Motion for Summary Judgment* ("Motion").[3] Plaintiff filed an *Opposition to Defendant's Motion for Summary Judgment* ("Opposition").[4] Defendant filed a *Reply in Support of Motion for Summary Judgment* ("Reply").[5]  The matter has been fully briefed.  The court has carefully reviewed the moving papers submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the

---

[1] *See* ECF No. 4.

[2] *See* ECF No. 13.

[3] *See* ECF No. 34.

[4] *See* ECF No. 38.

[5] *See* ECF No. 41.

District of Utah, the court has concluded that oral argument is not necessary and will determine the motions on the basis of the written papers.[6]  For the reasons set forth in the Motion, Reply, and herein, the court recommends that the Defendant's Motion be granted.

## SUMMARY OF FACTS[7]

In October of 2013, Defendant hired Plaintiff as a part-time, hourly software applications instructor for the Custom Fit-Company Training program ("Custom Fit").[8]  Plaintiff also served as a part-time, on-call substitute teacher with the College in the Business & Technology Department ("Business Department") for the Business Technology program ("Business Tech") and for the Information Technology program ("IT").[9]

I.     Sexual Harassment Claims.

On Thursday, February 13, 2014, Plaintiff sent an email to Ms. Jennifer Streker ("Streker"), Program Director of the Business Department, claiming Mr. Roger Fletcher ("Fletcher") had acted inappropriately toward Plaintiff and a student.[10]  Specifically, Plaintiff's email ("First Complaint") stated, in relevant part, the following:

> It was brought to my attention that a student was having an issue with Roger Fletcher. I spoke with this student, Jacquelyn Nelson, just to see if she had been to see you yet. She informed me that she hadn't, but that she was going to. She tried to see you yesterday and today, but she couldn't reach you.  The issue that she is having is that Roger has been saying and doing things she considers inappropriate. She also mentioned there are other female students in

---

[6] *See* DUCivR 7-1(f).

[7] The summary views the evidence in the light most favorable to Plaintiff.

[8] *See* ECF No. 35-2 at 2.

[9] *See* Motion at 7, ¶¶3,5; Opposition at 5, ¶¶3,6.

[10] *See* ECF No. 38-7 at 2.

> Marcie's class that feel the same way.  Some just deal with it and others move to Daniel's room to get away from it.  I have witness [sic] actions myself that I would consider inappropriate toward students as well as myself.  I didn't get details from Jackie as I figured that was where you came in.  But from what I have witnessed and my own experience is that Roger rubs a student's back, touches their shoulders, squeezes their shoulders and will even massage their shoulders.  I have also witnessed him leaning over a student, more than most instructors will do.
>
> I was feeling at a cross roads since I felt like I needed to bring this to your attention and yet I value my employment with Ogden Weber very much.  I voiced my concerns to Daniel, seeking advice and he too has witnessed these actions and what has been said to students when he was a student himself.
>
> …From what I can tell, it seems like this has been going on for a long while now and no one has said anything for fear of retaliation…. If you need to speak with me as well, please let me know. [11]

Streker did not understand Plaintiff's email to include a complaint that Plaintiff, too, had been allegedly sexually harassed by Fletcher.[12]  Streker, however, did not seek clarification from Plaintiff and did not forward the First Complaint to the College's Human Resources Department ("HR") for review.[13]

To address the First Complaint, Streker spoke to the student who had complained to Plaintiff, Ms. Marcie Fujikawa ("Fujikawa"), a Business Tech instructor referenced in Plaintiff's

---

[11] *Id.*

[12] *See* ECF No. 35-12 at 3, ¶7.

[13] *Id.*

email, and Fletcher.[14]  Fujikawa informed Streker that she had not noticed any wrongdoing by Fletcher.[15]

According to Streker, Fletcher denied any wrongdoing but acknowledged that he had a tendency to stand too close to people and put his hands on a person's shoulders.[16]  Streker determined Fletcher's conduct did not rise to the level of sexual harassment, per the College's policies.[17]  Streker counseled Fletcher about respecting another's personal space and avoiding unwelcomed touching.[18]  Streker did not discuss her conclusions with Plaintiff.[19]  Plaintiff  also did not experience any inappropriate conduct by Fletcher after she lodged her First Complaint.[20]

On May 28, 2014, Plaintiff used the College's EthicsPoint online system to lodge another complaint ("Second Complaint") about Fletcher.[21]  The Second Complaint contained essentially the same sexual harassment allegations contained in the First Complaint but included a claim of retaliation by Streker, Fujikawa, and Shon Child ("Child"), an IT program instructor.[22]  Plaintiff's Second Complaint stated, in relevant part, the following:

---

[14] *Id.* at 3, ¶8.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *See* ECF No. 35-3 at 12 (34:18-23).

[21] *See* ECF No. 38-8 at 2-4.

[22] *Id.*

> I reported Roger Fletcher for sexually harassing students. I reported this to Jennifer Streker. Since then I haven't been a substitute for Marcie Fujikawa and I was moved to Shon Childs [sic] department.  I was told yesterday when checking on my schedule that the budge [sic] was getting low and that they would have to look into the July budget. I personally feel as if I am being pushed out, being made to quit because of filing this report of sexual harassment.
>
> …I had witnessed and had him [Fletcher] as well touch and squeeze my shoulders and run his hand over my back.
>
> On 3/1/2014 I was moved over to the Programming department with Shon Childs [sic] to work.  I was never again asked to substitute for the Business Technology Department.  Every time Jennifer [Streker] sent out a mass email to the employees, I was not on the list, so I no longer got these emails from her.[23]

Theresa Walker ("Walker"), the College's HR Director, investigated Plaintiff's Second Complaint.[24]  Walker interviewed Plaintiff, Fletcher, Fujikawa, Child, Streker, Dana Slaughter ("Slaughter"), the Custom Fit Director, Richard Ewing ("Ewing"), a Business Technology instructor, the student identified in the first complaint, and Daniel Wade, the Student Success Center Job Coach.[25]  Walker determined (1) the evidence was insufficient to establish that Fletcher had engaged in behavior that was unwelcomed explicit or implicit sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, and (2) that

---

[23] *Id.*

[24] *Id.* at 3.

[25] *Id.*

there was no evidence of retaliation by Streker, Fujikawa, or Child.[26]  On June 30, 2014, Walker, Plaintiff, and Streker met to discuss Walker's conclusions and to clarify and discuss concerns.[27]

Defendant also issued a letter of reprimand to Fletcher because there was evidence that his actions made some individuals uncomfortable.[28]  Shortly after issuing the letter, the College received another complaint against Fletcher from a different student.[29]  The College terminated Fletcher's employment in late July 2014.[30]

II.   Retaliation Claim.

At the College, instructors were primarily responsible for lining up their own substitutes when they needed coverage.[31]  Instructors would either look at a substitute's calendar to figure out his or her availability or communicate directly with the substitute via email or text message to coordinate coverage.[32] Substitute instructor also would reach out to the instructor asking if he or she needed coverage.[33]  Administrators did not regularly line-up substitute teachers except in an emergency or when coordinating some long-term teaching assignments. As a part-time, on-

---

[26] *Id.*

[27] *See* ECF No. 38-1 at 9; ECF No. 38-12 at 2 (Walker states "I have requested a meeting with you and Ms. Streker…" which makes clear that Streker will also be present at the meeting).

[28] *See* ECF No. 35-15 at 2.

[29] *See* ECF No. 38-9 at 2-3.

[30] *See* ECF No. 35-16 at 2.

[31] *See* ECF No. 35-5 at 2, ¶7; Opposition at 10, ¶1; ECF No. 35-6 at 5, ¶5; Opposition at 11, ¶2; ECF No. 35-10 at 6, ¶4; Opposition at 11, ¶3.

[32] *Id.;* see e.g. ECF No. 38-3 at 2.

[33] *See* ECF No. 38-28 at 2-3; ECF No. 38-29 at 2.

call substitute instructor, Plaintiff understood that she was (1) limited to working 29 hours or less each week and (2) was not guaranteed any set number of hours.[34]

At some point in late 2013 or early 2014, Plaintiff agreed to substitute for Child and cover his IT courses.[35]  It was Plaintiff's objective to substitute teach for both Business Tech and IT, as well as continue working for Custom Fit.[36]  Plaintiff, however, acknowledged in a January 23, 2014 email that the College would need to "get other people" to substitute teach Fujikawa's Business Tech classes in light of Plaintiff's decision to cover IT courses.[37]  Plaintiff's teaching commitments for Fujikawa ended the week of February 24, 2014.[38]  Plaintiff started training/substitute teaching for IT March 1, 2014.[39]  The College hired new substitutes for Business Tech the following month.[40]

When Plaintiff started training for IT in early March of 2014, she already had a calendar set up to manage her teaching commitments for Custom Fit and Business Tech.  Plaintiff's

---

[34] *See* Motion at 7, ¶4; Opposition at 5, ¶4; ECF No. 35-3 at 18 (61:14-18).

[35] *See* ECF No. 38-28 at 2.

[36] *See* Opposition at 6, ¶6.

[37] *See* ECF No. 38-28 at 2.

[38] *Id.* at 3.

[39] *See* ECF No. 38-1 at 4; Opposition at 6, ¶6.

[40] *See* ECF No. 38-22 at 3-4 ("[Plaintiff] was working a lot of hours in March and April when the College announced open positions and hired [3] individuals. Plaintiff was also working hours with Custom-Fit. The Business Technology program needed more available help…. Plaintiff had also asked to move over and work in the Information Technology Department. So that was taking her away from the Business Technology Department and moving her to another program as she trained for that program. These newly hired individuals were for the Business Technology Department only.")

calendar reflects that she substitute taught for the Business Department in March, April and May of 2014.[41]  Plaintiff's calendar did not reflect regular teaching commitments for Fujikawa after the week of February 24, 2014.[42]  Furthermore, Plaintiff understood, and her calendar so reflects[43], that by late May she would no longer be covering the Wednesday-night class for a "Sharon Shank" in the Business Department.[44]

Plaintiff sent an email to Child on March 21, 2014, confirming the dates in April and May that she was working for Custom Fit and covering evening classes.[45]  Included in Plaintiff's email is her acknowledgment that the Custom Fit classes would reduce the hours she would be available to work for Child.[46]  In the same email, Plaintiff confirmed her travel plans to North Carolina when she would be unavailable for a significant portion of June 2014.[47]  Plaintiff sent another email to Child on May 27, 2014, noting her schedule had been confusing because of all the "flipping around" for Custom Fit and inquired about substituting for him May 30th and June 2nd.[48]  Child explained his budget was getting low and that they might need to look to the July budget before scheduling her to substitute teach again.[49]

---

[41] *See* ECF No. 38-1; ECF No. 38-26 at 2-6.

[42] *See* ECF No. 38-1 at 4.

[43] *See* ECF No. 38-1 at 4.

[44] *See* ECF No. 35-3 at 13 (41:23-25).

[45] *See* ECF No. 38-26 at 2-6.

[46] *Id.* at 2.

[47] *Id.* at 2.

[48] *See* ECF No. 38-27 at 2.

[49] *Id.*

Ms. Judy Galbraith ("Galbraith"), a teaching assistant with the College, contacted Plaintiff on June 30 and July 1, 2014, about a substituting for her in September.[50]  Plaintiff told Galbraith she was concerned that she was on the "bad list" for filing her complaints and that she had not been scheduled to work since the end of May.[51]  Galbraith indicated she thought Plaintiff could substitute teach and suggested Plaintiff contact Streker to confirm.[52]  Plaintiff did nothing to follow up with Streker and did not accept Galbraith's request.[53]

On July 5, 2014, Plaintiff received a stock email from the College's IT&T Department notifying her that her password would expire if she did not change it.[54]  Plaintiff allowed her password to expire.[55]  On August 25, 2014, Plaintiff notified Slaughter and others in Custom Fit that she had accepted an independent contractor position with a local web design company.[56]  She indicated that she would be working a full load and there were not enough "hours in a day or days in a week" to keep teaching classes at the College.[57]  Slaughter forwarded Plaintiff's email

---

[50] *See* ECF No. 38-3 at 2.

[51] *Id.* at 5.

[52] *Id.* at 6.

[53] *See* ECF No. 38-6 at 3.

[54] *See* ECF No. 38-5 at 2.

[55] *See* ECF No. 38-6 at 3.

[56] *See* ECF No. 38-4 at 2.

[57] *Id.*

to the HR Department,[58] which prompted HR to terminate Plaintiff's employment as of August 25, 2014.[59]

## ANALYSIS

### I.      Plaintiff's Opposition Fails to Conform to the Requirements of the Standing Order Regarding Summary Judgment.

On January 1, 2017, Judge Parrish entered a Standing Order[60] that contains procedures the parties must adhere to with respect to, in relevant part, motions for summary judgment. Specifically, a party opposing a motion "...must include a verbatim restatement of each of the moving party's facts that is in dispute with an explanation of the grounds for the dispute supported by citation to the record as required under Federal Rule of Civil Procedure 56(c) and supplemented by DUCivR 56-1(f)."[61]

Plaintiff's Opposition fails to provide a verbatim restatement of each of Defendant's facts that are in dispute.[62]   In turn, even if Plaintiff's Opposition properly conformed to the Standing Order's requirements, Defendant's Motion should be granted because Plaintiff fails to set forth specific facts showing that there is a genuine issue for trial.

### II.     Summary Judgment Standard.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[58] *Id.*

[59] *See* ECF No. 35-1 at 2.

[60] *See* ECF No. 10.

[61] *See* ECF No. 10 at 2.

[62] *See e.g.* Opposition at pg 6, ¶¶8-9 and pg 7, ¶¶21-22.

law.[63]  When employing this standard, the court must view the evidence and all reasonable

inferences therefrom in the light most favorable to the nonmoving party.[64]  "There is no genuine

issue of material fact unless the evidence, construed in the light most favorable to the nonmoving

party, is such that a reasonable jury could return a verdict for the non-moving party."[65]  An issue

of fact is "genuine if the evidence is such that a reasonable jury could return a verdict for the

non-moving party."[66]  A fact is "material" if, under the applicable substantive law, it is "essential

to the proper disposition of the claim."[67]

   In attempting to meet this standard, a movant that does not bear the ultimate burden of

persuasion at trial need not negate the other party's claim. [68]   Rather, the movant need simply

point to a lack of evidence for an essential element of the opposing party's claim.[69]

   After the movant has met this initial burden, the onus shifts to the non-moving party to

"set forth specific facts showing that there is a genuine issue for trial."[70] The non-moving party

---

[63] *See* Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[64] *See City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[65] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[66] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

[67] *See Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[68] *See Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[69] *Id.*

[70] *Anderson*, 477 U.S. at 256, 106 S. Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).

may not simply rest upon its pleadings to satisfy its burden.[71]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant."[72] The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[73]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[74]

### III.    Sexual Harassment.

Count I of the Amended Complaint asserts a claim of "sexual harassment and hostile working environment." (ECF No. 13.)  In order to establish a prima facie case of sexual harassment under a hostile work environment theory, Plaintiff must show: (1) that she was subjected to unwelcome harassment based on her sex and (2) due to the harassment's severity or pervasiveness, the harassment altered a term, condition or privilege of her employment and created an abusive working environment.[75]  "[T]he plaintiff must make a showing that the environment was both objectively and subjectively hostile ...."[76]  Whether the sexual conduct

---

[71] *See Anderson*, 477 U.S. at 256, 106 S. Ct. 2505; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[72] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[73] *Adams*, 233 F.3d at 1246.

[74] *See Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1199 (10th Cir. 2006).

[75] *See Hollis v. Acoustic Sounds, Inc.*, No. 13–1083–JWL, 2014 WL 806190, at *4 (D. Kan. Feb. 28, 2014) (citing *Kline v. Utah Anti–Discrimination & Labor Div.*, 418 Fed. Appx. 774, 780–81 (10th Cir. 2011)).

[76] *Walker v. United Parcel Service of America, Inc.*, 76 Fed. Appx. 881, 885 (10th Cir. 2003).

complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances.[77]

    A.  <u>Based on Gender</u>.

Plaintiff must show that she was the object of harassment because of her gender.[78] Conduct which is overtly sexual may be presumed to be based on gender; actionable conduct is not limited, however, to behavior motivated by sexual desire.[79]

    The relevant conduct in question is rubbing, touching or massaging shoulders and touching backs.  It is undisputed that Fletcher was touching the shoulders and backs of only females.  Furthermore, it was only females who filed complaints against Fletcher.  Neither Plaintiff nor Defendant has presented the court with any evidence that Fletcher inappropriately touched male students or male colleagues.  Accordingly, for purposes of ruling on Defendant's Motion, the court determines the conduct was gender-based.

    B.  <u>Severity or Pervasiveness</u>.

    Turning to the next step, to survive summary judgment Plaintiff must also show that a rational jury could find her workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.[80]  Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from

---

[77] *See Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir. 1982).

[78] *See Penry v. Fed. Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir. 1998).

[79] *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S. Ct. 998, 140 L.Ed.2d 201 (1998).

[80] *See Davis v. U.S. Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir. 1998).

the totality of the circumstances.[81]   "[T]he plaintiff must make a showing that the environment was both objectively and subjectively hostile ...."[82]  This objective inquiry focuses on the perspective of a "reasonable person in the plaintiff's position, considering all the circumstances," and requires "careful consideration of the social context in which particular behaviors occurs and is experienced by its target." [83]  To determine whether the environment was sufficiently severe or pervasive, the court is not required to find that the offending conduct seriously affected the plaintiff's psychological well-being.[84]  Further, " 'simple teasing,' ... offhand comments, and isolated incidents (unless extremely serious) will not amount to …changes in the 'terms and conditions of employment.' "[85]

Plaintiff submitted two complaints essentially containing the same allegations regarding Fletcher rubbing her or another student's shoulders and running his hands along her back.  The incidents in which Plaintiff complained occurred in November 2013-February 2014.  In addition, two students also submitted complaints to the College, after Plaintiff submitted the Second Complaint, regarding observing or experiencing Fletcher engaging in similar behavior. Based upon the information before the court, it appears Plaintiff had spoken with each student and had encourage them to file complaints, as well.

Other than the limited incidents of unwelcomed touching, which by themselves are offensive and have no place in any work environment, Plaintiff does not provide any evidence

---

[81] *See Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir. 1982).

[82] *Id.*

[83] *Morris v. City of Colorado Springs,* 666 F.3d 654, 664 (10th Cir. 2012).

[84] *Id.* at 665.

[85] *Id.* at 664 (quoting *Oncale v. Sundowner,* 523 U.S. at 82, 118 S. Ct. 998 (1998)).

that Fletcher yelled at her or others, made demeaning comments toward her or others, used abusive language when interacting with her or others, shared offensive gender-related jokes, or made sexually implicit or explicit gestures or comments when touching her shoulders or back. Furthermore, the conduct complained of usually occurred in a classroom or an office setting with others present.

For instance, during the November/December 2013 incident, Plaintiff confirmed Fujikawa was also present.  Fujikawa stated she did not witness anything inappropriate between Fletcher and Plaintiff during Streker's investigation.  Plaintiff also confirmed that, after she filed her First Complaint, she did not experience any more unwelcome touching by Fletcher indicating the incidents were isolated.

Nothing before the court establishes that any department at the College, including the Business Department, was permeated with discriminatory intimidation, ridicule and insult that were sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.  After filing the First Complaint, Plaintiff continued to substitute teach for Custom Fit, Business Tech and IT during the months of March, April, and May.  This is confirmed by Plaintiff's calendar, her timecard slips, and her March 2014 and May 2014 emails to Child.[86]  Plaintiff's schedule with each program varied until she left for her vacation in June of 2014.  Further, in Plaintiff's August 25, 2014 email to those in Custom Fit, she states that she absolutely loved working each and every day with them. The court determines that even Plaintiff did not subjectively perceive the College environment to be hostile.

Viewing the evidence and all reasonable inferences therefrom in the light most favorable to Plaintiff, the incidents complained of were not physically threatening or humiliating, occurred

---

[86]  ECF Nos. 38-1, 38-21, 38-26, and 38-27.

infrequently, and were not severe or extremely serious.  At most, Fletcher's alleged conduct was inappropriate and made those who experienced it uncomfortable.  Accordingly, the court determines the College's environment, taken as a whole, does not reflect a hostile work environment under Title VII standards and, thus, a reasonable jury could not return a verdict in Plaintiff's favor.  As a result, the Defendant's Motion as to her sexual harassment claim should be granted.

## IV.    Retaliation.

Title VII prohibits employers from retaliating against employees for making charges, testifying, assisting, or participating in an investigation, proceeding or hearing about unlawful employment practices.[87]  Absent any direct evidence of retaliation, the court employs the *McDonnell Douglas* burden-shifting, three-part framework.[88]  To establish a prima facie case of retaliation under this framework, a plaintiff must prove: (1) that she engaged in protected activity, (2) that she was subjected to adverse employment action after the protected activity, and (3) there is a causal connection between the protected activity and the adverse employment action.[89]

### A.  Protected Activities.

Protected activities fall into two distinct categories: participation or opposition.[90]  The court focuses on the participation category because that is at issue in this matter.  The

---

[87] *See* 42 U.S.C.A. §2000e-3(a).

[88] *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 550 (10th Cir. 1999).

[89] *See Mattioda v. White*, 323 F.3d, 1288, 1293 (10th Cir. 2003).

[90] *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 259 (4th Cir.1998).

"participation clause" provides that an employer may not retaliate against an employee "because [the employee] has ... *participated in any manner* in an investigation, proceeding, or hearing under" Title VII.[91]  "The participation clause is designed to ensure that Title VII protections are not undermined by retaliation against employees who use the Title VII process to protect their rights."[92]

Plaintiff submitted two complaints to the College regarding Fletcher's alleged sexual harassment that were the impetus for Streker's and Walker's investigations.  Thus, Plaintiff's complaints, as Defendant concedes, unquestionably constitute protected activity.

B.  <u>Subject to Adverse Employment Action.</u>

Adverse employment actions include acts that "constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[93]  Additionally, actions that carry "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects" may rise to the level of an adverse action.[94]  However, mere inconveniences or alterations of job responsibilities do not suffice to establish an adverse

---

[91] 42 U.S.C.A. § 2000e–3(a) (§704(a)).

[92] *Brower v. Runyon,* 178 F.3d 1002, 1006 (8th Cir.1999).

[93] *Haynes v. Level 3 Commc'ns, LLC,* 456 F.3d 1215, 1222 (10th Cir. 2006).

[94] *Annett v. Univ. of Kansas,* 371 F.3d 1233, 1239 (10th Cir. 2004).

action.[95] Thus, although "adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action."[96]

Plaintiff indicates that as a result of filing her initial complaint in February 2014, she was removed from Streker's group emails and experienced a reduction in her hours.

i.      Group emails.

Plaintiff contends she was left off of Streker's group emails after Plaintiff filed her First Complaint and this amounts retaliation.  It is unclear to the court what would qualify as a "group" as it relates to Plaintiff's claim of retaliation.  While these details could have been of use to the court, Plaintiff's retaliation claim could not have been resuscitated because Plaintiff fails to establish how being left off group emails constitutes an adverse employment action.

Plaintiff's own evidence submitted with her Opposition confirms she was not regularly coordinating with Streker regarding monthly substitute-teaching assignments for the Business Department programs.[97]  Instead, Plaintiff was coordinating directly with the Business Department instructors Fujikawa and Child.[98]  Plaintiff and the instructors had engaged in this process as early as January 2014 and it continued in February- May of 2014 and even after Plaintiff filed her First Complaint on February 13, 2014.[99]

---

[95] *See Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007).

[96] *MacKenzie v. City and Cnty. of Denver,* 414 F.3d 1266, 1279 (10th Cir. 2005) (quoting *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir. 1996)).

[97] *See* ECF Nos. 38-2, 38-26, 38-28 and 38-29.

[98] *Id.*

[99] *Id.*

Furthermore, Galbraith, Fujikawa and Child confirmed that teachers and substitutes would normally coordinate coverage directly with each other.[100]  The Business Department teachers further confirmed, and it is unconverted, that at no time after February 13, 2014, did they receive instructions from Streker or anyone else at the College that they had to discontinue scheduling Plaintiff as a substitute instructor for their courses.[101]

As support for her claims of retaliation, Plaintiff points to a May 15, 2014 email from Streker sent to a group regarding the schedule for substitute teachers in computers classes for the months of May, June and July.[102]  It is clear that Plaintiff was not included on the email.[103] Plaintiff did, however, receive a copy of the same email on May 15, 2014, because Ewing forwarded the email to her.[104]  As a result, Plaintiff was provided an opportunity to correct the calendars if she had been signed up to substitute teach for one of the computer courses during those months.  She could have sent an email to Streker and everyone else who was included on the original email, as some did, offering to provide coverage but Plaintiff did nothing.[105] Furthermore, it is clear Streker did not engage in coordinating coverage for the courses after

---

[100] *Id; see also* ECF Nos. 35-5, 35-6, 35-10, and 38-3.

[101] See ECF Nos. 35-5, 35-6, 35-10.

[102] *See* ECF No. 38-17 (which contains a portion of the same email chain included with ECF No. 38-13 at 3).

[103] *See* ECF No. 38-17 at 2.

[104] *See Id.* at 2.

[105] *See* ECF No. 38-13 3-4.

sending her original email as documented by the communications that follow in the email chain.[106]

Streker leaving Plaintiff off of the May 15, 2014 email does not rise to the level of a significant change in Plaintiff's employment status or a decision causing a significant change in benefits.  Plaintiff's own calendar for May 2014 shows that after the May 15, 2014 email was sent, she continued to have assignments with Custom Fit and IT, and she continued to assist in the evenings with the Wednesday class.[107]  Likewise, Plaintiff's calendars for the months of February, March and April document her many and varied assignments with Custom Fit, Business Tech, and IT even after the First Complaint was lodged.[108]

In turn, leaving Plaintiff off the May 15th email did not carry a significant risk of humiliation, damage to her reputation, or a concomitant harm to future employment prospects. Plaintiff is not referenced in the May 15th email chain, no one spoke ill of her or discouraged others from reaching out to her.  Clearly, Ewing was not deterred from sending a copy of the email to Plaintiff.   Furthermore, Streker's omission of Plaintiff from the May 15th email did not deter Plaintiff from filing the Second Complaint a few days. For these reasons, a reasonable jury could not find omission from group emails constitutes an adverse employment action by the College.[109]

---

[106] *See* ECF No. 38-13 at 2-3.

[107] *See* ECF No. 38-1 at 6.

[108] *See* ECF No. 38-1 at 3-5.

[109] Plaintiff raises the issue of spoliation as it pertains to any emails the College failed to retain and asserts that she is entitled to a presumption that the destroyed emails would have bolstered her case.  *See* Opposition at 15. The court previously determined that the College did not act in bad faith and was merely negligent in its destruction of the emails due to the two-year retention policy that was in operation at the time. *See* ECF No. 27 at 4.  Therefore, Plaintiff is not

ii.      Reduction in hours.

Plaintiff claims she experienced a reduction in hours after she filed her First Complaint on February 13, 2014.  However, there is no evidence supporting Plaintiff's claim.  Instead, the undisputed material facts establish that Plaintiff knew and documented in writing: (1) how covering IT classes would require the College to hire substitute teachers for the Business Tech program thereby eliminating her substitute teaching opportunities for Fujikawa and (2) how accepting assignments for Custom Fit would reduce her hours available to cover Child's courses.

Plaintiff confirmed in her January 23, 2014 email to Child that the College would need to find other substitute teachers to cover Fujikawa's Business Tech classes because Plaintiff wanted to cover IT courses.[110]  Plaintiff knew her last week assisting Fujikawa was February 24, 2014.[111] Therefore, a reasonable trier of fact could not determine there was a nexus between the First Complaint and the discontinuation of Plaintiff substituting for Fujikawa in March, April and May.

Further in March of 2014, Plaintiff agreed to teach classes in April and May for Custom Fit.  As a result, her hours with IT were reduced.  This reduction in hours was unrelated to the First Complaint.  Specifically, Plaintiff stated to Child that "I know the Custom Fit classes will cut down my hours with you due to not being available. Sorry for that."[112]

---

entitled to such presumption as lost emails could have been favorable to either party, not only Plaintiff.

[110] *Id* at 2.

[111] *Id.* at 3.

[112] *See* ECF No. 38-26 at 2.

Separately, at the end of May, Plaintiff's assignment to cover for a Sharon Shank's course on Wednesday evening ended. This caused a reduction in hours unrelated to the First Complaint.  In addition, Plaintiff was also out of town in North Carolina from approximately June 3-20, 2014, and therefore unable to teach during that time.  On June 30, 2014, Plaintiff received a request to substitute teach for Galbraith in September.  Yet, Plaintiff did not accept this request and instead allowed her password with the College to expire approximately six days later on July 6, 2014.  At no point after receiving the First or Second Complaints did the College take any action against Plaintiff's employment. Instead Plaintiff notified Slaughter on August 25, 2014, that she had accepted a position with an outside company and was unable to teach at the College anymore.  Even viewing the evidence in the light most favorable to Plaintiff, the court finds that she is unable to meet her initial burden under *McDonnell Douglas* because she did not suffer an adverse employment action after engaging in a protected activity.

In light of the foregoing, a reasonable trier of fact could not find in Plaintiff's favor and concluded that Streker, Fujikawa and Child had retaliated against her by reducing her hours.  As a result, the court need not address the remaining step of the *McDonnell Douglas* analysis.[113]

## RECOMMENDATION

For the reasons stated above, the court hereby RECOMMENDS as follows to the District Court:

1. Defendants' Motion for Summary Judgment be GRANTED; [114]and

---

[113] *See Espinoza v. Dept. of Corr.,* No. 10–cv–00548, 2011 WL 5024826, at *7 n.7 (D. Colo. Oct. 21, 2011) (citing to *Hinds v. Sprint/United Management Company*, 523 F.3d 1187, 1201 (10th Cir. 2008).

[114] ECF No. 34.

2. Plaintiff's Motion Contempt be DENIED as MOOT.[115]

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within fourteen (14) days of being served with a copy, any party may serve and file written objections.[116]  Failure to object may constitute a waiver of objections upon subsequent review.

IT IS SO ORDERED.

Dated this 10th day of August, 2018.

By the Court:

_____
Dustin B. Pead
United States Magistrate Judge

---

[115] ECF No. 37.

[116] *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).